## CHARACTER OF THE POSITION OF COUNTY SUPERINTENDENT OF SCHOOLS.

Common Pleas Court of Highland County.

STATE OF OHIO, EX REL J. A. B. SROFE, A TAX-PAYER, v. WILBUR H. VANCE ET AL.*

Decided, November 13, 1914.

*Schools—County Superintendent Under the New Law is a Public Officer —Injunction—Quo Warranto—Office and Officers.*

A county superintendent of schools, appointed by the county board of education under the act of the General Assembly passed February 5, 1914, is a public officer and as such his eligibility or title to the office can not be brought in question in a suit by a tax-payer to enjoin the payment of his official salary.

*John Logan,* for the plaintiff.
*Wilson & McBride* and *Geo. L. Garrett,* contra.

NEWBY, J.

The county board of education of Highland county, created and constituted under the authority of the school code enacted in February, 1914, appointed the defendant, Wilbur H. Vance, to the position of county superintendent of schools and fixed the amount of his salary.

The plaintiff brings this suit to enjoin the payment of the superintendent's salary on the ground, as alleged, that Vance is ineligible to the position for the reason that he does not possess the qualifications prescribed by the statute for the occupant of the position of superintendent.

The case is submitted on general demurrer to the petition.

The authority of the county board of education to appoint a county superintendent and determine his salary is not questioned. The contention of the plaintiff is that the appointment

---

*Affirmed by the Court of Appeals, March 12, 1915, on the opinion of the lower court.

of Vance was illegal, and consequently that the payment of his official salary is illegal, because Vance is not eligible to the position, in that he does not possess the qualifications prescribed by Section 4744-4 of the General Code, and that therefore his appointment by the county board is a nullity.

It is conceded by counsel that the title of a public officer to his office can not be tried or called in question either directly or indirectly in an injunction proceeding such as this is. And it is undoubtedly the settled law of this state that the proper proceeding and the only one in which a public officer's title to an office can be inquired into is a proceeding in *quo warranto* which must be instituted by and on the relation of the Attorney-General or the prosecuting attorney.

But it is contended by counsel for plaintiff that a county superintendent provided for by the act of the General Assembly, passed February 5th, 1914, is not a public officer within the meaning of that term, but is a mere employee of the board appointing him, and that being such employee, the court can inquire into his elegibility in a suit to enjoin the payment of his salary. So that the question presented to the court on the demurrer to the petition is narrowed down to what is the proper remedy on the facts set out in the petition as to the alleged ineligibility of Vance—injunction or *quo warranto*—and the decision of this question turns upon the question whether the position of county superintendent is a public office within the meaning of the law.

General definitions by the courts and the text-writers as to what is a public office and what constitutes one a public officer are plentiful, but as remarked by counsel during the course of the argument, it is difficult in many cases, and surely it is so in this case, to apply the definitions to the facts of the case.

Our Supreme Court has discussed and decided the question in a number of cases, and I quote from the opinions in some of the leading cases on the subject. In his opinion in the case of *State, ex rel,* v. *Brennan,* 49 O. S., at page 38, Judge Spear says:

"It is not important to define with exactness all the characteristics of a public office, but it is safely within bounds to say that where, by virtue of law, a person is clothed, not as an in-

cidental or transient authority, but for such time as denotes duration and continuance, with independent power to control the property of the public, or with public functions to be exercised in the supposed interest of the people, the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office.''

And Judge Minshall says in the opinion in *State, ex rel*, v. *Jennings*, 57 O. S., pages 424 and 425:

''Many efforts have been made to define a public office; and it is only the incumbent of such an office whose rights can be challenged in a proceeding in *quo warranto*. But it is easier to conceive the general requirements of such an office, than to express them with precision in a definition that shall be entirely faultless. It will be found, however, by consulting the cases and the authorities, that the most general distinction of a public office is, that it embraces the performance by the incumbent of a public function delegated to him as a part of the sovereignty of the state. Thus in *Meacham's Offices and Officers*, Section 4, it is said: 'The most important characteristic which distinguishes an office from an employment or contract, is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive, or judicial, attaches, for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer.' So in *High on Extraordinary Legal Remedies*, Section 625, it is said: 'An office, such as to properly come within the legitimate scope of an information in the nature of a *quo warranto*, may be defined as a public position, to which a portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, and which is exercised for the benefit of the public.' ''

Referring to the Brennan case, Judge Minshall said on page 426 of this report:

''The judge in delivering the opinion, did not undertake to give an exhaustive definition of a public office, but did say that 'it is safely within bounds to say that where by virtue of law, a person is clothed, not as an incidental or transient authority, but for such time as denotes duration and continuance,

with independent power to control the property of the public, or with functions to be exercised in the supposed interest of the people, the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office.' Here and throughout the opinion, prominence is given to the fact, that a public officer is one who exercises, in an independent capacity, a public function in the interest of the people, by virtue of law, which is only saying in another form, that he exercises a portion of the sovereignty of the people delegated to him by law.''

In the case of *State, ex rel,* v. *Halliday,* 61 O. S., 172, the court say:

''The distinguishing characteristic of a public officer is, that the incumbent, in an independent capacity, is clothed with some part of the sovereignty of the state, to be exercised in the interest of the public as required by law. The office must be of a continuous character as opposed to a temporary employment, though the time be divided into terms to be filled by election or appointment in accordance with the genius of our system of government; and a bond and an oath of office are generally, though not always required for the faithful performance of the duties of the incumbent; and compensation is made either by salary or fees, or both. *Meachem, Officers and Offices,* Section 4; *High on Leg. Rem.,* Section 625; *State* v. *Brennan,* 49 Ohio St., 33; *State, ex rel,* v. *Jennings,* 57 Ohio St., 415.''

In applying these definitions, the following have been held to be officers: the medical superintendent of a hospital for the insane (*State, ex rel,* v. *Wilson,* 29 O. S., 347); the president of the city council (*State, ex rel,* v. *Anderson,* 45 O. S., 196); a stationery storekeeper to be appointed by the clerk of the common pleas court of Hamilton county (*State, ex rel,* v. *Brennan,* 49 O. S., 38); the office of ''county warden'' created by Section 409, Revised Statutes (*State, ex rel,* v. *Halliday,* 1 O. S., 171); a patrolman of the police department whose salary and term of office are fixed by council (*State, ex rel,* v. *Painesville,* 13 C.C. [N.S.], 577, affirmed 85 O. S., 483); a president of a board of education (*State, ex rel,* v. *Withrow,* 11 C.C.[N.S.], 569).

And the following have been held not to be public officers: a superintendent of public schools (*State, ex rel,* v. *Vickers,* 58 O.

S., 730; *Ward* v. *Board of Education,* 21 C. C., 699); a person employed by a city council to trim lights in its electric light department (*State, ex rel,* v. *Anderson,* 57 O. S., 429); a fireman employed by the council to perform the usual duties of a fireman (*State, ex rel,* v. *Jennings,* 57 O. S., 415); a superintendent of a county infirmary (*Palmer* v. *Zeigler,* 76 O. S., 210).

Upon a study of the various definitions of a public officer and the discussion of the question by the courts and the examples cited by them, we find the infallible test to be this: Is the incumbent of the position under inquiry, in an independent capacity, clothed with some part of the sovereignty of the state, to be exercised in the interest of the people? That is, are his duties prescribed by law without any direction or control over them by the appointing power, and to be exercised in a governmental function in the interest of the public as contradistinguished from those created by contract and subject to control and direction by an employer.

Applying this rule to the case of a county superintendent appointed by the county board under General Code Section 4744, let us consider what are his duties and from what source they are derived. His duties as laid down in the statute are the following:

1. Shall be secretary of the county board; must keep full record of the proceedings, etc. Section 4732, General Code.

2. Shall attend all meetings of the county board and shall be the executive officer of the board with privilege of discussion but not of voting. Section 4744, General Code.

3. Shall co-operate with the different district superintendents in holding teachers' meetings of districts, assembled for the purpose of conferring on the course of study, discipline, school management and other school work and for the promotion of the general good of all the schools in the district. Section 7706-1, General Code.

4. Shall hold monthly meetings with superintendents, and advise with them on matters of school efficiency; visit the schools as often as possible, and with the advice of the district superintendent, shall outline a schedule of school visitation for the

teachers of the county school district.   Section 7706-3, General
Code (104 O. L., 144).

5.   Shall have direct supervision over the training of teach-
ers in any training courses which may be given in any school
district and shall personally teach not less than one hundred or
more than two hundred periods in any one year.   Section 7706-4,
General Code (104 O. L., 144).

6.   Shall see that all reports required by law are made out
and sent to the county auditor and superintedent of instruction
and make such other reports as the superintendent of instruc-
tion may require.   Section 7706-4, General Code (104 O. L.,
144).

7.   Nominates to the county board district superintendents
who must be selected unless a majority vote of the county board
should be opposed.   Section 4739, General Code.

8.   He is made by law clerk of the board of examiners, and a
member of the board.   Section —, General Code (104 O. L., 144).

He is also charged with other duties with respect to training
schools and institutes.

The foregoing are all the duties that are or can be required
of a county superintendent and are prescribed by statute, and
no power is vested in the county board or elsewhere to add to
them.   In the discharge of these duties, he is not answerable to
the board in any sense nor are they given any direction or con-
trol over him whatever.   His powers and duties spring from the
law alone.   He is absolutely and entirely independent of the
board and free from its direction or control.

Now this being the nature of the duties enjoined upon Vance
by statutory mandate alone, can it be said that the conferring
of such duties upon him involves a delegation to him of some
of the sovereign functions of government?   If it does, he is a
public officer, and as said in the beginning, his title to the office
is immune from attack by injunction and the demurrer should
be sustained.   The encouragement of schools and the means of
instruction is a fundamental policy of our state government en-
joined by the Constitution.   The General Assembly is com-
manded by the Constitution to make such provision by taxation

or otherwise as will secure a thorough and efficient system of education. And it seems unquestionable that whoever may be clothed by law with a separate and independent duty and power to execute and carry into effect this important policy of the state, is, to use the language of the recognized tests of office, invested with a part of the sovereignty of the state and is, in contemplation of law, exercising public functions in the supposed interest of the people. If this conclusion be correct, it follows that the position of county superintendent under the recent act of the Legislature possesses all the indicia necessary to make the position a public office and the incumbent of the position a public officer.

Counsel for the plaintiff contends that the precise question here presented has been determined favorably to him in the cases of *Ward* v. *Board of Education*, 21 C. C., 699, and *State, ex rel*, v. *Vickers*, 58 O. S., 730, in both of which cases it was held that a superintendent of schools is not an officer. But these decisions are wholly inapplicable to a case of a county superintendent because of the fact that the duties of the officials mentioned are materially different, and especially because of the further fact that in the present case the duties are derived from the law and are performed independently of any other body or official; while in the cases of superintendents of schools, the superintendents were performing duties prescribed by contract and were answerable to an employer. And besides, as the law stood at the time those decisions were made, the management and control of the schools were vested absolutely in the board of education. The board, and not the superintendent, were responsible for the conduct and control of the school, while under the present law that duty and responsibility are shifted on to the county superintendent. Formerly the superintendent of schools was merely the agent or employee of the board through whom the board discharged their duty to the public to manage and control the schools under their jurisdiction.

I am constrained to hold that under the school law enacted last February the county superintendent therein provided for is a public officer, and hence that the plaintiff has mistaken his remedy. This view of the case renders it unnecessary to pass

upon the contention of counsel for the demurrant that the determination by the county board of the eligibility of Vance is conclusive in the absence of proof of fraud or an abuse of discretion, so I express no opinion on that position of counsel further than to say that I am not impressed with its correctness in a case where the eligibility of the appointee can be legally called in question.

From the standpoint of a citizen interested in the success of the schools it is regrettable that a question exists as to the legal qualification of the one occupying the highly important position of county superintendent of the schools of our county. Now that the question is raised it certainly should be desirable, not only on the part of the occupant of the position personally, but in the interest of the efficiency of the schools as well, to have the question squarely met and the controversy finally and conclusively settled. But there is only one way to reach this result and that is through the form of remedy which the law has pointed out for the settlement of a question of the character here made.

The demurrer to the petition will be sustained and exceptions noted.